It has been great having Judge Hinkle with us this week from the Northern District of Florida to help us out with our docket this week. Judge, we appreciate you coming up here from Tallahassee to help us out. Thank you. Thank you. And we have three cases on the docket this morning, and the first is United States of  And I see Ms. Reese is here for Lasseter, Mr. Jaffe is here for Browdy, and Mr. Miller is here for Pettifar, and Ms. Sweeney is here for the government. Ms. Reese, are you ready to proceed? Yes, Your Honor. You may. I'm ready. Good morning. May it please the Court, Counsel. As Your Honor mentioned, my name is Rachel Reese, and I represent Mr. Brown Lasseter on this matter. Mr. Lasseter and his two co-defendants were charged by the United States of America with one single conspiracy, the conspiracy to possess and distribute methamphetamine through the mail from California to Florida. And in presenting their case at trial, however, the evidence that was presented did not establish just one conspiracy. It established, essentially, our position is at least three separate conspiracies. And they were labeled at the time that this case was presented as the, quote, the Lasseter conspiracy, the Battle conspiracy, and the Rollerson conspiracy. Now, as the record reflects, Mr. Rollerson was also a charged co-defendant in this case, and he ultimately cooperated with the government and testified against the three co-defendants that we represent today. And his testimony established a conspiracy in and of itself. The testimony of the government's main witness, Mr. Phelps, established a separate conspiracy involving Mr. Battle. They all used the same California supplier. They all used the same method of package and shipping. They all used the same shipping label provided by Billy Phelps. They all shared the goal of shipping and distributing methamphetamine. And that's not something that I can disagree with the court about. However, there is a lot more that the government is required to prove if there is supposed to be an overarching link between these individuals that makes it one conspiracy. And that's where it's lacking. There is no proof that they acted in concert with one another in order to further those goals, regardless of the underlying methods that were used. The jury couldn't rely on those facts to reach the conclusion that it did? The jury was provided with additional facts that would, our argument is that it would have prevented them from finding that because of the fact that there was no interdependence amongst them. For example, Mr. Battle, there was no testimony that Mr. Battle relied on Mr. Laster in order to distribute these, to distribute the methamphetamine. The only main person that was overlapping was Mr. Phelps, and his testimony was that a lot of them didn't even know that he was working with the other individuals. The pre-sentence investigation report characterized the conspiracies as parallel conspiracies, literally meaning side by side. These three conspiracies were working side by side, not together, and that is why the evidence did not establish that they were one overall conspiracy. Instead, were actually three separate ones. If I agree with you on that. Yes, Your Honor. Isn't it the case that the government only had to prove a conspiracy between these three? That's certainly encompassed by the indictment, and as long as the jury found that one conspiracy, then it doesn't matter if there was a separate conspiracy, separate Battle conspiracy, and separate Roberson's conspiracy, because there was the one conspiracy these three were convicted of. Isn't that right? Your Honor, the indictment charges these three co-defendants. However, it also charges Mr. Roberson, who testified, and then the evidence that was presented, the precedent of the court establishes that if the indictment charges one conspiracy, and then multiple conspiracies are presented at trial, that creates a material variance, and if you can establish prejudice, that there is a substantial likelihood that the jury would have relied on proof of one conspiracy, and ultimately finding the defendants guilty because of that. That's where the issue becomes, and that's exactly what we have in this case. But what makes you think the jury convicted Mr. Laster because Mr. Battle had a separate conspiracy? That doesn't make any sense. Did you ask for a multiple conspiracy instruction? Your Honor, there was no multiple conspiracy instruction that was given. I know, but I couldn't find where you asked for one either. Did you ask for one? Your Honor, I was not trial counsel. However, trial counsel did not ask for one, and one was not given in this case. But in our position, that actually furthers the argument because the jury was never instructed or advised that they had to rely only on specific pieces of evidence in finding that Mr. Laster and his co-defendants were guilty of just this one conspiracy. It's our argument that the lack of instruction actually further supports the prejudice that resulted as a result of this because the evidence that came in about Mr. Battle specifically was overwhelming. The government's case started with Mr. Battle in California. It ended with Mr. Battle when he provided the tracking numbers to his attorney who then provided them to law enforcement, and he's mixed in in all the incidents in between. He's the person who was threatening the government's main witness. The government was able to rely on his actions even though he never testified, and those actions, it's our position, is what resulted in these three co-defendants being found guilty. And again, the prejudice that the jury would have transferred proof of Mr. Battle's conspiracy or Mr. Rollerson's conspiracy onto these three defendants is significant, and that can't be something that this court can overlook. And as a result, it's our position that either Mr. Laster's motion for judgment of acquittal or his motion for new trial should have been granted as these arguments were made by Mr. Laster both during trial and after trial in his motion for new trial. The second argument that was raised in Mr. Laster's briefing that I would like to touch on with the court, unless the court has any other questions about this first issue, is the issue about refusing to admit the testimony of the special agent Gabriel Krug. And that issue is essentially the district court did not allow Mr. Laster to present a witness that would have established his entire defense. And specifically, Mr. Laster wanted to present the testimony of Agent Krug for the sole purpose of asking a simple question, whether or not he was aware that Mr. Battle's wife, Kalonda Battle, had made a statement to him during an investigation that Mr. Battle had sent approximately six packages of methamphetamine through the mail in order to frame Mr. Laster. In order to get—go ahead. In order—you can ask. We're going to ask the same question, I'm sure. That's plainly hearsay. And, Your Honor, it's our position that there is an exception under the rules, and that was what was argued, is that under 804B3, this is something that could have been admitted because the witness that would be able to provide that testimony, Mrs. Battle, was not an available witness at the time. But this didn't implicate her. It implicated somebody else. I mean, it's not a statement against penal interest unless it implicates the speaker, right? Yes, Your Honor, and I would disagree respectfully only because of the fact that Mrs. Battle was charged as a co-conspirator that came out of that exact investigation. So her comments resulted in her indictment, as well as her husband's indictment, as well as the other attorney, Mr. Birch, that was brought up a lot during this case. So her statements were against her penal interest and ultimately were used against her in charging her and ultimately her pleading guilty in her own federal case. But do you consider her overall statements in that analysis or the particular hearsay statement that you're seeking to enter? I think it's the latter. I believe it is the latter, Your Honor. However, it's our position that because of her, the federal indictment that she had pending, that that statement alone would have been against her penal interest as well, just in light of that. So I say that my time is going into my rebuttal time. Thank you. Let me ask you one question before you sit down. Were you trial counsel? I was not, Your Honor. Okay. Did trial counsel argue that the wife was not available? He did, Your Honor. This was the second trial, and she had been unavailable at the first trial, and he argued that she was unavailable. He also argued that she would have alleged spousal immunity, and her fear was that if she testified in this trial that she was waiving any privileges against her husband, if she were to go to trial in their own federal indictment. Could she assert spousal privilege if her husband was not a defendant? His argument was that the spousal privilege would be transferred because if she testified in this case, then she would have waived any spousal privilege in their own case. If they went to trial, she would be forced to testify against him as well because she had already waived that privilege. That's what was argued by Mr. Lasseter's trial counsel. Thank you. Thank you. Mr. Jaffe, you're here for Mr. Brody. That's correct, Your Honor. May it please the Court, David Jaffe on behalf of Mr. Jerry Brody. We're asking the Court to reverse Mr. Brody's conviction from the district court and or to vacate Mr. Brody's sentence and remand for resentencing. Mr. Brody was given a life sentence in this case, followed by 10 years of supervised release and a $50,000 fine to add insult to injury since he was sentenced to a life sentence. It's our position, Your Honor, is that in this particular case, as it relates to Mr. Brody, that the government failed to prove beyond a reasonable doubt that Mr. Brody had the specific intent to possess either methamphetamine or to possess with the intent to distribute methamphetamine. In this particular case, our position was or is that really the only evidence against Mr. Brody in this case was from his daughter and that his daughter had been asked by Mr. Brody to go pick up a package. We had also objected to the fact that Mr. Brody's sentence was enhanced by two levels based upon a firearm. It's our position that the Court abused its discretion in granting the two-level enhancements as it relates to Mr. Brody. Certainly, in most drug cases, there may or may not be firearms involved, but in this case, it's our position that the firearm was too attenuated. The events involving the firearms that occurred in another state occurred after Mr. Brody was allegedly involved approximately one month in this overall conspiracy, and it's our position that a two-level enhancement ought not apply. Additionally, as it relates to the conspiracy itself, the testimony in this case involves co-defendants through a majority of the case, and really Mr. Brody is merely present. There's a party that Mr. Brody is at. He goes to visit Mr. Feltz. He goes to his residence. He meets with Mr. Feltz. And throughout the course of this trial, witnesses were asked whether they ever observed Mr. Brody in possession of methamphetamine. The answer was no. Whether there was any audio or video of Mr. Brody in possession of methamphetamine, the answer was no. Whether there was any recorded telephone calls regarding Mr. Brody's involvement in this case, again, the answer was no. Doesn't that ignore the drug package pickup that you spoke about at the very beginning? It's our position it doesn't ignore that. We argued in our brief that the evidence that was presented by the government vis-à-vis Mr. Brody's daughter was insufficient to find that Mr. Brody had the requisite specific intent to be involved in a conspiracy or that he joined in a conspiracy itself. There was argument by prior counsel that there may have been multiple conspiracies as well, even though that wasn't asked for in the instruction. But it's our position that that evidence in and of itself is insufficient. The first trial ended, I believe, in a mistrial. The jurors were not able to come to a decision as to that case. And again, I see my time is up, but I would like to add that we also argued that the court, abused its discretion in finding another enhancement in that Mr. Brody somehow recruited his daughter because of compassion and love. It was the daughter that testified that she was willing to do this with her father because she wanted to try and reestablish her relationship with him. And I see I'm over my time. Thank you very much. Thank you. Mr. Joffe, Mr. Miller. Good morning. May it please the Court. I apologize. Landon Miller on behalf of Mr. Pettifer. Your Honors, we would, of course, and we have adopted a lot of the co-appellant's arguments as it relates to the abuse of discretion as a failure to grant a mistrial, as it relates to testimony from a government witness that one of the co-defendants had been incarcerated or was incarcerated just prior to the trial. It's Mr. Pettifer's position that that should have been granted a mistrial. How do we get around our decision in the United States v. Emmanuel where we said the mere utterance of the word jail, prison, arrest does not, without regard to context or circumstances, constitute reversible error per se when the comment is brief, unresponsive, and adds nothing to the government's case that the denial of a mistrial is proper? I understand the prior rulings. Our position is that Mr. Pettifer should have at least been given an opportunity as well for a curative instruction. I don't believe he was. Again, I wasn't trial counsel either. I thought the judge specifically said, Do you want a curative instruction? And the answer was no. I thought that was to the co-defendant, not to Mr. Pettifer. Well, but surely counsel Mr. Pettifer was there at the bench conference and could have said, I want a curative instruction. I'm not disputing that trial counsel was present, Judge. Again, I wasn't trial counsel. I know that it was not offered to, my understanding of the transcripts, it was not offered to trial counsel at the time as it relates to Mr. Pettifer. We would apply harmless error review to that issue, wouldn't we? I believe so, Judge. I would also like to argue that the lower court abuses discretion in failure to grant a JOA as it relates to Mr. Pettifer. Your Honor, with my understanding, again, we have already talked about parallel conspiracies. I don't believe there was any evidence in the lower court that Mr. Pettifer, in light of what the court had earlier said about same source of supplies, same modes of transportation. But other than that, there was only, I believe, phone calls between Ms. Simondon and Mr. Pettifer, and that was the transactions there. I see my time has expired. All right. Thank you, Mr. Miller. Ms. Sweeney for the government. May it please the Court. Good morning, Your Honors. I'm Sarah Sweeney here on behalf of the United States. I'll begin with the sufficiency argument. And the United States' position is that overwhelming evidence here supported the idea that there was one conspiracy.  And a reasonable jury clearly could have found only one conspiracy here. This Court looks to whether the goal is the same, whether the course of conduct is the same, and how the participants overlap with each other. And I submit that all three of those factors are clearly met by the evidence here. And I would particularly rely on the Richardson case from this Court, but I will go through the evidence as to what exactly we're relying on. So, first of all, Mr. Laster directs Mr. Feltz to create labels for the whole conspiracy. Mr. Laster is the only person who has contact with Mr. Feltz, but then these labels are used throughout the conspiracy by all three of the appellants who are here, clearly. In addition to that, when Mr. Laster first began working directly with Mr. Feltz in approximately January of 2015, Mr. Feltz testified that he and Mr. Battle had had a conversation right before then, and Mr. Battle told him that Mr. Laster was going to bring him money to pay for his services. Mr. Laster then shows up with money and gives Mr. Feltz $1,500. This is clear evidence that Mr. Battle and Mr. Laster are all in one conspiracy together. They're paying for the same conduct. All three of the defendants who are here today recruited Deborah Scott. They all met with her in her home, and she testified that while Mr. Laster did most of the talking, she was also shown methamphetamine by Mr. Browdy during that meeting when she said she didn't know what it looked like. In addition to that, Mr. Browdy recruits his own daughter, as you've already heard about, and then after she was arrested while trying to deliver that methamphetamine, she met with Mr. Browdy and Mr. Pettafar. Again, you're seeing times where all three of these defendants are certainly present together, and overreaching it all is Mr. Battle, who has set all of this into motion. There was also evidence below that Mr. Pettafar recruited Dawn Cimino and that she delivered methamphetamine that had been previously delivered to a FedEx facility in California in a rental car under his name. And after she is arrested, I'm sorry, not after, when she is calling him at the direction of a DEA agent, a controlled call, he tells her that his friends will be upset that she picked up the package after he directed her not to. Again, they are all working in concert together. And then ultimately as to Mr. Rollerson, he appears on the scene last. He appears later, but he is working with the same source, the same packager who's using tin cans, and the same shipper. He's introduced to Mr. Feltz by Mr. Battle, and he learns from his packager that she is also working for Mr. Laster and Mr. Pettafar. So ultimately there was more than enough evidence for the jury to find one conspiracy. Do you agree that Mr. Pettafar was less connected to the conspiracy than the others? Your Honor, I think ultimately I don't agree with that, and here's why. So first of all, he is at the initial meeting with Mr. Feltz at the party where they first meet. In addition to that, he rents cars that are used to deliver the drugs to shipping facilities in California. And I believe there's at least two occasions that the government established that that happened. On a package that was delivered in California was from a car in his name. At the same time that some of these controlled, I'm sorry, that some of these deliveries are happening, there is a deposit, I'm sorry, a withdrawal of $2,500 from Mr. Pettafar's bank account in Sacramento, California, which is where the source is located. So given all of these things, Mr. Pettafar is just as involved as the others. He simply seems to have somewhat of a different role. Mr. Laster seems to be primarily involved with Mr. Feltz. This is just based on the government's evidence. This is a conspiracy, so sometimes it's hard to tell precisely what individual people's roles are. But what we can see is that Mr. Laster is involved with Mr. Feltz. Mr. Pettafar is in California. And I'd say the same thing about Mr. Browdy as well. Back in November and December of 2014, he had extensive hotel stays in California, in Sacramento, one totaling about nine days and another totaling about two weeks. And that's within the time frame of the conspiracy as well. So ultimately, I think Mr. Pettafar was an equal participant. And, of course, the district court judge here found that he was a supervisor because he recruited Ms. Cimino. I'd like to respond to just two things that my colleagues raised in relation to this issue. The first is the idea that the PSR said there were parallel conspiracies. The initial PSR did use that language, but then it was not in the revised PSR. And ultimately, at sentencing, the district court heard argument and decided that that language would not be in. So I don't think it's appropriate to rely on language that was in an initial PSR that the district court chose to remove. And then, Judge Hinkle, I wanted to address your question about jury instructions. I would say not only was it not requested, I would say this is actually an issue of invited error because below, each of the defendants submitted proposed jury instructions. And in those proposed jury instructions, they did not ask for a multiple conspiracy instruction, nor did they do so at the time of the charge conference. So because of that, to the extent there were any error with respect to the jury instructions, that would have been invited. But again, I would point to Richardson, which says that when there's not a basis to offer a multiple conspiracies jury instruction, it's a not error to not give one. Next, I'd like to address the Quilanda Battle hearsay argument. Judge Wilson, you asked if below, counsel had argued that Ms. Battle was unavailable. And I actually think they did not. I think they ultimately waived this argument. I'm looking at document 510, which is one of the transcripts of the trial, and counsel said, I know what she's going to say, and I consider her unavailable. We went through that argument. I'm not raising it at this time. It's just I can't call her because I know she's going to come in and say, I'm not going to testify. So ultimately, they did not. Did you get that site right in front of you? You said it's ECF 510. I'm sorry, I didn't say the page. Thank you. Page 109. So ultimately, the defendants didn't meet their burden with respect to this. Ultimately, the proponent of evidence has the burden to show that a person is unavailable. And they completely failed to do so here to the point of telling the district court that they really weren't even going to try. What if she had a vote to the Fifth Amendment? Would the statement have been admissible at that point? I still think no, Your Honor, because 804 has two parts. The first part is unavailability, which would be demonstrated if a witness claimed the Fifth Amendment. But the second part of 804 is that it has to meet one of several exceptions. The only one that I think is applicable here is a statement against penal interest. That was really not discussed below at all because, as I said, the parties never got there because the appellants didn't present this issue fully. But even looking at a statement against penal interest, I don't think this statement by Ms. Battle was a statement against her penal interest. It was against her husband's. So there was nothing in the statement that her husband was framing Mr. Laster that would have suggested any liability on her part. And to the extent that the appellant seemed to rely on her own criminal charges, that was an entirely separate conspiracy. Beginning in about November of 2015, going into December of 2016—I'm sorry, November of 2015, December of 2015, and into the start of 2016, the Battles, Herbert Battle and Quilonda Battle, met with an attorney, Stephen Birch. He asked them to ship heroin to various locations in Sarasota County in Florida to help him with some legal issues that he was having. All three of them were indicted in that conspiracy, convicted of that conspiracy, and sentenced on that conspiracy. It was an entirely separate conspiracy than the one Mr. Battle had already been involved in relating to methamphetamine. So these were two separate conspiracies. I do also want to point out as well, there's some argument in the brief about this statement that it's necessary for a defense or that it's otherwise reliable. And what I'd like to point out to the Court is that there is discussion in the previous trial about why this statement was unreliable. Now, it's just a proffer by the government attorney because there was never— I'm sorry, I keep saying Ms. Battle, but the agent nor Ms. Battle ever came to court and explained what they would say or what they would do. But in the previous trial, so that's document 293 at page 277, the AUSA in the case proffered that there were issues with Ms. Battle's statement. One was that the United States believed she was working with Mr. Laster and picking up packages for her, that they had some degree of a relationship with each other, and that Mr. Battle and Ms. Battle were actually in the process of getting a divorce at that time. And so this statement was not on its own otherwise reliable, at least as far as the United States was concerned. Now, of course, there was never any evidence presented about any of this because it didn't get that far. But I don't think the record—I think the record shows that the United States did not feel that this statement was reliable. Would that statement have been inadmissible in her separate criminal proceedings? I can imagine some basis of trying to show that the two conspiracies were perhaps one larger— well, you said the two conspiracies were perhaps one larger conspiracy, and this showed a connection between them or something like that. I think what's suggested by the appellants—I can't say broadly because I haven't honestly thought about that quite enough, but what's suggested by the appellants is that it shows some kind of a connection between Ms. Battle and her husband. And I'd say for that purpose, it's very weak. I mean, they're married, so there's obviously substantial evidence of their connection to each other. And then in addition to that, although this is really straying into the other case, there was a recorded meeting between Mr. Battle, Ms. Battle, and Mr. Birch where they discussed this. And that was ultimately—would have been presented at trial. There was no trial in that case either because everyone pled. But to the extent it was necessary to show a connection or to show Ms. Battle's involvement in this separate conspiracy, this evidence really wouldn't have borne very much weight because there was such substantial other evidence in that other conspiracy of her involvement. And I don't think that this evidence shows her—her statement to the agent, I don't think it shows her involvement in any conspiracy at all. And then I would like to turn to the firearm enhancement. And Mr. Browdy's counsel argued that that shouldn't have been connected to him and that the attack with the firearm occurred only one month into Mr. Browdy's involvement. And I do want to dispute that because I think that that's not correct. I think what he's referring to is Vontisha Scott is arrested at the end of March, beginning of April of 2015. And then the first attack occurs in April—between April and June of 2015. The second attack, when the firearm was used, was actually in either July or August of 2015. So that's several months. And then even beyond that, as I mentioned before, Mr. Browdy's involvement started long before then. As far back as November 2014 and December 2014, he was staying for lengthy periods of time in Sacramento, California, where the source of supply was located. Your Honors, if you have no other questions for me, I will rest on our briefs. I do have something I wanted to ask you about. It hadn't been talked about here, but it's in the papers, and it deals with the 851 filed on Mr. Pettifer. Yes, Your Honor. Let me ask you just hypothetically first, not related to Mr. Pettifer, but if the government decided in a case that a defendant had attempted to intimidate a witness and said, you know, I wasn't going to file an 851, but you attempted to intimidate a witness, the government filed an 851, that would be within the government's discretion? I believe so, Your Honor. Now, we know from Apprendi and Blakely and Booker and Ring and all those cases that a fact that increases a maximum sentence has to either be admitted or proved to a jury beyond a reasonable doubt. That it's not okay for the judge, who is after all a neutral, to decide that fact. But now we have a system where the prosecutor, who is not a neutral, decides the fact and not only decides the fact, but doesn't even have to tell the defendant what the dispositive fact is, doesn't give the defendant notice and an opportunity to be heard. If it's unconstitutional for the judge to make the decision, how can it be constitutional for the prosecutor to make the decision based on a secret fact that nobody even learns? Well, just to take one step back, I know this isn't precisely what you're getting at, but I have to disagree slightly with the premise of your question. For a prior conviction, that is the one fact that a jury does not have to determine, and of course that's exactly the kind of enhancement that an 851 was at that time. So it's no different between, in terms of a burden of a jury having to find it, it's no different here between the government and the jury. That's absolutely right when you're talking about the dispositive fact that he has a prior qualifying conviction. But I'm talking about what you told me hypothetically. You agree with my hypothetical, and I think it's right. The government can decide that the reason I'm going to file it is because he attempted to intimidate a witness, and they don't even have to tell the defendant that's why I'm filing it. Your Honor, my time is up. I assume you want me to answer your questions. I would love it. And let me start off by saying, I understand there's a controlling circuit present on this, and this circuit, and I think every circuit, but I don't think the Supreme Court's spoken to it, and it seems to me hard for the court that decided, the Prendi and Blakely and Booker, to decide that that system is okay. Your Honor, I don't think it's a secret fact here that led to this. I think it was part of the plea bargaining process, and I think very rarely would it be secret to anyone why the government had chosen to file an 851 if they had not done so just at the outset of the case as a matter of practice, which is what I think occurs more frequently now under the way that the policy is presently addressed for the Department of Justice. But even using your example, if someone had threatened a witness and that was the reason that the government decided to file the 851, I can't think of a scenario in which that would be kept a secret from either the defendant or the court. But if the prosecutor said, that's why I'm doing it, and the prosecutor did it, nobody would take it to the judge or a jury to say, is the prosecutor right? The prosecutor would have decided the fact. But it's not a fact, Your Honor. It's an enhancement that is generally applicable, and there's no contention here or even in your example that the enhancement does not otherwise apply. To not seek it would essentially be an act of grace or an act of plea bargaining, and so I don't think that to seek it requires the same level of justification as what you're speaking of. All right. Thank you. Thank you. Thank you, Your Honors. Thank you, Ms. Sweeney. Ms. Reese, you deserve some time for rebuttal. May it please the Court. I just have two brief points I would like to address. The first is in regards to the parallel conspiracies language that was in the initial pre-sentence investigation report. That language was referred by Mr. Laster's counsel in their motion for new trial, and what's important for the Court to consider is in the final pre-sentence investigation report, although the language was removed, the fact section as it was laid out still categorized two separate conspiracies. It categorized first Laster, Pettifer, Browdy, and then went through all the facts of their conspiracy, and then it had another factual section just for Mr. Rolerson, which in and of itself establishes that they considered them to be two separate conspiracies, and they were all charged under the same indictment. The other issue I want to address is it's the government's position that Mr. Battle was part of the same conspiracy, but there are several points in the record where the AUSA on the case either refused to concede that point or argued otherwise, and I'm referring specifically to docket entry 506, which is some of the trial testimony. At one point, the district court asked the government if they could establish the conspiracy between Billy Feltz, the three defendants that are on trial, and Mr. Battle, and in response, and I'm referring to pages 60 and 61, the government replies that they could establish a connection.  Later in the same docket entry on pages 83 to 86, another discussion is had where Mr. Kauffman, who was representing Mr. Laster, specifically asked the government, so are you saying yes, they are part of this conspiracy or not, and the government did not answer, and then again, it was brought up another time where Mr. Kauffman had objected on evidentiary basis, but the argument was based on the classification of Mr. Battle and Mr. Laster together, and the government again said that they would rephrase the question because that's not the point they're trying to get across. I see my time has expired. I would just ask the court to review the record and find that Mr. Battle's conviction should be vacated, and this case reversed accordingly. Thank you very much. Thank you. Mr. Jofte, have you reserved some time? No, I have not. Oh, you have not? Okay, all right. No one else reserved any time? But you were eloquent in your rebuttal. I appreciate it. It was a winning rebuttal. All right. And Mr. Jofte, I see that you and Mr. Miller were appointed by the court to represent your clients, and the court appreciates your service. Thank you. Thank you, Judge. Have a good day. The next case is Perry v. Shoemaker.